UNITED STATES DISTRICT COURT
DISTRICT OF CONNECRICUT

| | |
|---|---|
| IN RE                               ) | |
| CONVERGENT OUTSOURCING, INC. ) | Master Docket No. 3:13-md-2478 |
| TELEPHONE CONSUMER            ) | MDL No. 2478 |
| PROTECTION ACT LITIGATION     ) | |
|                                            ) | |
| _____ ) | |

## CONSOLIDATED AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiffs Cindy Vazquez, Diana Austin, Cherie Laursen, Debbie Bennett, and Phillip Bennett (hereinafter referred to jointly as "Plaintiffs") bring this action for damages, and other legal and equitable remedies resulting from the illegal actions of Convergent Outsourcing, Inc. ("Convergent") in negligently, knowingly, and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). The TCPA prohibits unsolicited voice calls to cellular telephones without prior express consent within the meaning of the TCPA. Plaintiffs also bring a claim for violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits abusive and deceptive collection attempts.

2.      "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, Slip Opinion, Case No. 10-1195 (United States Supreme Court January 18, 2012) (internal citations omitted).

3.      In an effort to enforce this fundamental federal right to privacy, Plaintiffs

file the instant class action complaint alleging violations of the TCPA and FDCPA.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. §1331 (general federal question), 47 U.S.C. § 227 (TCPA), and 15 U.S.C. § 1692k(d) (FDCPA).   Venue in this District is proper because the action was assigned here by the Judicial Panel on Multidistrict Litigation.

## PARTIES

5.     Plaintiff Cindy Vazquez ("Vazquez") is a natural person who resided in the Northern District of Illinois at the time her action was filed.

6.     Ms. Vazquez is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

7.     Plaintiff Cherie Laursen ("Laursen") is a natural person who resided in the District of Arizona at the time her action was filed.

8.     Ms. Laursen is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

9.     Plaintiff Diana Austin ("Austin") is a natural person who resided in the District of Oklahoma at the time her action was filed.

10.     Ms. Austin is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

11.     Plaintiff Debbie Bennett ("Mrs. Bennett") is a natural person who resided in the Eastern District of Michigan at the time her action was filed.

12.     Mrs. Bennett is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

13.     Plaintiff Phillip Bennett ("Mr. Bennett") is a natural person who resided in

the Eastern District of Michigan at the time her action was filed.

14.     Mr. Bennett is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

15.     Defendant Convergent is a corporation chartered under Washington law with its principal offices in Renton, Washington.

16.     In late 2011, Convergent renamed some of its subsidiary companies to be consistent with the overall Convergent brand. Indeed, Convergent includes the company formerly known as E-R Solutions, Inc. *See* http://www.convergentusa.com/corporate/news.php?s=21

17.     Convergent provides consumer accounts receivables management services, including consumer collection services.

18.     Convergent is, and at all times mentioned herein was, a corporation and a "person", as defined by 47 U.S.C. § 153(39).

19.     Convergent regularly attempts to collect consumer debts alleged to be due another.

20.     Convergent was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

21.     As noted above, in 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

22.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an

emergency or the prior express consent of the called party.

23.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

24.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."

25.     The TCPA prohibits the use of any "automatic telephone dialing systems" to call cellular telephones. It also prohibits the use of artificial or prerecorded messages.

i)      "Automatic telephone dialing system" means any equipment that has the "*capacity* to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011) (emphasis original).

## FACTS RELATING TO ALL PLAINTIFFS

26.     Convergent made numerous telephone calls to Plaintiffs' cellular telephones. The telephone numbers that Convergent used to contact Plaintiffs with an "automatic telephone dialing system," were assigned to cellular telephone services as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

27.     The calls Convergent placed to Plaintiffs' cellular telephones were placed using an automatic telephone dialing system.

28.     Convergent uses a telephone system that "calls numbers from a computer managed list and plays a pre-recorded message to the call recipient or answering machine with advanced text to speech capability." *See* http://www.convergentusa.com/technology/?t=2.

29.     None of the telephone calls alleged below constituted calls that were made for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

30.     Defendant frequently uses skip-tracing services to locate telephone numbers used by consumers whom Convergent wishes to call.

31.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the Defendant to demonstrate that the Plaintiffs provided express consent within the meaning of the statute because it is the best entity to determine how numbers were attained.

## FACTS RELATING TO PLAINTIFF VAZQUEZ

32.     During the years prior to the filing of this complaint, Ms. Vazquez received several calls on her cellular telephone from Convergent.

33.     The calls Convergent placed to Ms. Vazquez's cellular telephone were placed using an automatic telephone dialing system.

34.     The calls from Convergent used an artificial or prerecorded voice message, which indicated that Convergent was attempting to reach someone with the last name "Santiago." Ms. Vazquez was unable to decipher the first name of the person Convergent was attempting to reach.

35.     The messages from Convergent stated that if the recipient (Ms. Vazquez)

was not Santiago, then she should press a specific number to indicate that she is not Santiago.

36.     After answering Convergent's calls, Ms. Vazquez complied several times with Convergent's instructions and pressed the specific number to indicate that she was not Santiago.

37.     Ms. Vazquez has never provided her cellular telephone number to Convergent.

38.     "During the transaction that resulted in the debt owed," Ms. Vazquez did not provide her cellular number to Convergent or the original creditor. Indeed, Ms. Vazquez was not the consumer Convergent was looking for.

39.     Ms. Vazquez did not otherwise provide express consent to receive calls by Convergent on her cellular telephone.

40.     Notwithstanding the fact that Ms. Vazquez did not provide the underlying creditor or Convergent with her cellular number, Convergent contacted Ms. Vazquez on her cellular telephone and continued to contact her after she notified Convergent that she was not Santiago.

41.     All telephone contact by Convergent to Ms. Vazquez on her cellular telephone occurred via a pre-recorded voice, and all calls that are the subject of this complaint occurred within four years of the filing of this complaint.

## FACTS RELATING TO PLAINTIFF AUSTIN

42.     From September 2012 to October 2012, Defendant repeatedly contacted Austin on her cellular telephone using an "artificial or prerecorded voice" as defined by 47 U.S.C. § 227(b)(1)(A).

43.     When Austin answered the calls from Convergent, she heard an automated

message telling her to hold for the next operator.

44.     Austin did not otherwise provide express consent to receive calls from Convergent on her cellular telephone.

45.     Upon information and belief, Convergent obtained Austin's cellular telephone number from a skip trace, as Austin did not have that number when she incurred the debt Convergent was collecting.

46.     Defendant did not have prior express consent to place automated or prerecorded calls to Austin on her cellular telephone.

## FACTS RELATING TO PLAINTIFF LAURSEN

47.     On or about April 2, 2013 at approximately 2:33 p.m., Defendant contacted Laursen on Laursen's cellular telephone number via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

48.     The collection call from Defendant's telephone number (602) 734-0835 to Plaintiff's cellular telephone number ending in 4436 was unsolicited by Laursen and without Laursen's permission or consent.

49.     Laursen never provided permission or consent for Defendant nor the original creditor of the alleged debt to call Laursen on her cellular telephone number.

50.     Laursen did not have the cellular number ending in 4436 at the time the alleged debt was incurred.

51.     Throughout the month of April 2013, on an almost daily basis, Defendant continued contacting Laursen on Laursen's cellular telephone number via an "automatic telephone dialing system" using an artificial or prerecorded voice.

7

## FACTS RELATING TO THE BENNETT PLAINTIFFS

52.   Debbie and Phillip Bennett each maintain a cellular telephone through a singular carrier, each having a separate line on a "Shared Usage" plan.

53.    The service for their cellular phones is via a "cellular telephone service" as described in 47 U.S.C. § 227(b)(1)(A)(iii).

54.   The Bennett's maintain their cell phones to maintain personal contacts with family and friends and for emergency contact.

55.   Neither Debbie nor Phillip Bennett have an "established business relationship" with Defendant and have never provided Defendant with authorization to contact their cellular telephones.

56.   In the early part of 2012, Defendant launched a collection campaign against Phillip Bennett calling him on his cell phone to collect on an account.

57.   Over the next months, Defendant called Phillip Bennett in some periods on a daily basis and on many days, multiple times in a day.

58.   Phillip Bennett did not owe the account.

59.   Debbie Bennett answered some of the phone calls and advised Defendant that they were calling the wrong person.

60.   Despite this notice, Defendant continued to call Mr. Bennett repeatedly and continuously with the intent of harassing him into paying the account.

61.   Phillip Bennett asked Defendant to cease calling on numerous occasions. Defendant ignored all of Mr. Bennett's requests to cease calling his cellular telephone.

62.   Defendant also placed several calls to the cellular telephone of Debbie Bennett.

63.     Debbie Bennett asked Defendant to cease calling on numerous occasions. Defendant ignored all of Mrs. Bennett's requests to cease calling her cellular telephone.

64.     In each of the calls, Defendant used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) to initiate the calls to Phillip Bennett on his cellular phone.

65.     In each of the calls, Defendant used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) to initiate the calls to Debbie Bennett on her cellular phone.

66.     In the calls, Defendant used an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with Phillip Bennett.

67.     In the calls, Defendant used an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with Debbie Bennett.

## COUNT I - TCPA – CLASS CLAIM (CELLULAR CALLS)

68.     Plaintiffs incorporate the above factual allegations herein.

69.     Convergent made unsolicited commercial phone calls to the wireless telephone number of Plaintiffs and the other members of the class using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, as evidenced by the pre-recorded nature of the calls.

70.     These phone calls were made without the prior express consent of Plaintiffs or the class.

71.     Convergent has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent

9

of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . ."   As a result of defendant's illegal conduct, the members of the class suffered actual damages and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

72.     Plaintiffs and class members are also entitled to and do seek injunctive relief prohibiting defendant's violation of the TCPA in the future.

## CLASS ALLEGATIONS

73.     Plaintiffs bring this claim on behalf of (1) all persons within the United States (2) who, on or after October 26, 2012 and on or before twenty days from the filing of this Consolidated Complaint (3) received a non-emergency telephone call from Convergent to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and (4) where defendant's records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

74.     Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

75.     Plaintiffs represent, and are members of, the Class.

76.     Plaintiffs do not know the exact number of members in the Class, but based upon the size of Convergent, Plaintiffs reasonably believe that class members number at minimum in the thousands.

77.     Convergent has caused actual injury and actual harm to Plaintiffs and all

members of the class, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls and such calls are an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

78.    This Class Action Complaint seeks money damages and injunctive relief.

79.    The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit the parties and the Court in avoiding a multiplicity of identical suits. The class can be identified easily through records maintained by Convergent.

80.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to, the following:

a.    Whether Convergent engaged in a pattern of using automated equipment to place calls to cellular telephones;

b.    The manner in which Convergent obtained the cell phone numbers;

c.    Whether Convergent thereby violated the TCPA; and

d.    The appropriate relief.

81.    As persons who received calls using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA, Plaintiffs assert claims that are typical of each class member. Plaintiffs

will fairly and adequately represent and protect the interests of the class, and have no interests which are antagonistic to any member of the class.

82.   Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

83.   A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel defendant to comply with the TCPA.   The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

84.   Defendant has acted on grounds generally applicable to the class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of themselves and the class members and against Defendant Convergent for:

a.   Statutory damages pursuant to 47 U.S.C. § 227(b)(1);

b.   Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

c.   An award of attorneys' fees and costs to counsel for Plaintiffs

and the Class;

d.     Such other relief as the Court deems just and proper.

## COUNT II - FDCPA – INDIVIDUAL CLAIMS

85.     Plaintiffs incorporate the above factual allegations herein.

86.     Convergent's practice of placing calls to Plaintiffs' cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiffs' prior express consent, was harassing and annoying.

87.     Plaintiff Vazquez kept her cellular telephone on or around her person every day, she was unable to avoid defendant's calls. Additionally, Defendant repeatedly called Ms. Vazquez's cellular telephone even though she was not the intended recipient, and she indicated as such by pressing the number as instructed by Defendant's message.

88.     Plaintiff Laursen maintains her cellular telephone service for personal and emergency purposes, and was unable to avoid defendant's calls. She found the repeated calls to be inconvenient, annoying and harassing.

89.     Plaintiffs Phillip and Debbie Bennett maintain their cellular telephone service for personal and emergency purposes, and were unable to avoid defendant's calls. Additionally, Defendant repeatedly called the Bennetts' cellular telephones even though they were not the intended recipients, and they indicated as such by repeatedly telling Defendant.

90.     Defendant violated the FDCPA, 15 U.S.C. § 1692d and 1692d(5) by attempting to harass and annoy Plaintiffs' by calling their cellular telephones without their consent and in violation of the TCPA.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of

13

herself and against Defendant Convergent for:

        a.      Statutory damages;

        b.      Attorney's fees, litigation expenses and costs of suit;

        c.      Such other or further relief as the Court deems appropriate.

        Respectfully submitted,

        /s/ Keith J. Keogh
        Attorney for Plaintiff Cindy Vazquez

Keith J. Keogh, Esq.
Timothy Sostrin, Esq.
Katherine Bowen, Esq.
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, Illinois     60603
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com
Interim Co-Lead Class Counsel

Sergei Lemberg, Esq.
LEMBERG LAW LLC
1100 Summer Street, Third Floor
Stamford, CT, 06905
203.653.2250 x5500 (office)
203.653.3425 (fax)
slemberg@lemberglaw.com
Interim Co-Lead Class Counsel

Ian B. Lyngklip, Esq.
Lyngklip & Associates Consumer Law Center, PLC
24500 Northwestern Highway, Suite 206
Southfield, MI 48075
248.208.8864

David James McGlothlin, Esq.
Hyde & Swigart
2633 E. Indian School Rd., Ste. 460
Phoenix, AZ 85016
602-265-3332

**JURY DEMAND**

Plaintiffs demand trial by jury.

<u>/s/ Keith J. Keogh</u>

**CERTIFICATE OF SERVICE**

      **THIS IS TO CERTIFY** that on March 31, 2014, the foregoing was filed via the CM/ECF system for the District of Connecticut, which sent notice of such filing to the following:

Barbara Fernandez, Esq.
Hinshaw & Culbertson, LLP
2525 Ponce de Leon Blvd., Suite 400
Miami, FL 33156

Benjamin J Stone, Esq.
Veris Law Group PLLC
1809 Seventh Ave., Suite 1400
Seattle, WA 98101

Birgit Stuart, Esq.
Ronald S. Canter, Esq.
Law Offices of Ronald S. Canter LLC
200A Monroe St., Suite 104
Rockville, MD 20850

Craig J. Mariam, Esq.
Gordon & Rees LLP-CA
633 West Fifth St., 52nd Floor
Los Angeles, CA 90071

David M Schultz, Esq.
Nabil G Foster, Esq. Hinshaw & Culbertson
222 N. LaSalle St., Suite 300
Chicago, IL 50501

James H. Ryan, Esq.
Paul Gamboa, Esq.
Gordon & Rees, LLP
One North Franklin, Suite 800
Chicago, IL 60606

Kirstie M. Simmerman, Esq.
Gordon & Rees LLP - Dallas, TX
2100 Ross Ave., Ste. 2800
Dallas, TX 75201

Matthew Gregory Kleiner, Esq.
Gordon & Rees, LLP - AZ
111 West Monroe St.
Phoenix, AZ 85003

Steven A Siman, Esq.
Attorney at Law
3250 West Big Beaver Rd., Suite 344
Troy, MI 48084

Thomas C. Blatchley, Esq.
Gordon & Rees LLP-CT
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033

Kenneth E Payson, Esq.
Davis Wright Tremaine LLP - WA
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045

David C Lundsgaard, Esq.
Graham & Dunn, PC-WA
Pier 70
2081 Alaskan Way, Suite 300
Seattle, WA 98121

Donald A. Yarbrough, Esq.
2000 E Oakland Park Boulevard, Suite 105
P.O. Box 11842
Fort Lauderdale, FL 33339

Maxie Broome , Jr., Esq.
Maxie Broome, Jr., P.A.
1495 Magnolia Street
Bartow, FL 33830

Matthew Jon Militzok, Esq.
3230 Stirling Road, Suite 1
Hollywood, FL 33021

L. Jeanette Rice, Esq.
Walsh Becker Spears & Sanders
14300 Gallant Fox Lane
Suite 218
Bowie, MD 20715

Carlo Sabatini, Esq.
Sabatini Law Firm, LLC
216 N. Blakely Street
Dunmore, PA 18512

Russell S. Thompson, IV
Aaron D. Radbil
Dennis R. Kurz
Weisberg & Meyers, LLC
5025 N. Central Avenue
Suite 602
Phoenix, AZ 85012

Brian L. Shrader
Centrone & Shrader, LLC
1710 N. 19th Street, Suite 205
Tampa, FL 33605

Thomas A. Lash
Lash & Wilcox, PL
4401 W. Kennedy Boulevard, Suite 210
Tampa, FL 33609

Tammy L. Hussin, Esq.
Lemberg Law LLC
6404 Merlin Drive
Suite 100
Carlsbad, CA 92011

/s/ Sergei Lemberg_____
  Sergei Lemberg, Esq.