UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

**IN RE: CONVERGENT TELEPHONE
CONSUMER PROTECTION ACT LITIGATION**          MDL No. 2478

_____

## MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS' UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 2

TERMS OF THE SETTLEMENT ..................................................................... 5

    1.   Class Definition ................................................................................. 5

    2.   Settlement Benefits to Settlement Class Members .............................. 6

    3.   Claim Form ......................................................................................... 7

    4.   Settlement Class Representatives and Attorney's Fees and Incentive Awards ............ 7

    5.   Releases ............................................................................................... 8

    6.   Notice .................................................................................................. 9

    7.   Opt-Out Rights ................................................................................... 9

    8.   Proposed Deadlines .......................................................................... 10

POINT I  THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED ................................................................ 11

    I.    STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT 11

    II.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................. 13

POINT II  THE SETTLEMENT CLASS SHOULD BE CERTIFIED ....................................... 20

    I.    LEGAL STANDARD FOR CONDITIONAL CERTIFICAITON OF CLASS ACTION FOR SETTLMENT PURPOSES ................................. 20

        A.   Fed. R. Civ. P. 23(a) Requirements ................................................. 21

            i.    Numerosity is Satisfied ............................................................. 21

            ii.   Commonality is Satisfied .......................................................... 22

            iii.  Typicality is Satisfied ............................................................... 23

            iv.  Adequacy of Representation is Satisfied .................................... 23

        B.   Fed. R. Civ. P. 23(b)(3) Requirements ............................................ 24

        C.   Fed. R. Civ. P. 23(b)(2) Requirements ............................................ 26

POINT III  THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE ............. 26

CONCLUSION ................................................................................................. 29

# **TABLE OF AUTHORITIES**

## Cases

*Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-248 (S.D. Cal. Sept. 28, 2012)............... 17

*Agne v. Papa John's Intern., Inc.,* 286 F.R.D. 559 (W.D. Wash. 2012) ...................................... 15

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S. Ct. 2231 (1997)........................ 19, 23, 24

*Anwar v. Fairfield Greenwich Ltd.,* 289 F.R.D. 105 (S.D.N.Y. 2013)........................................... 24

*Arthur v. Sallie Mae,* No. C10-198, 2012 U.S. Dist. LEXIS 3313 (W.D. Wash. Jan. 10, 2012). 17

*Avio, Inc. v. Alfoccino, Inc.,* 2015 WL 8731983 (E.D. Mich. Dec. 14, 2015).............................. 21

*Baranski v. NCO Fin. Sys., Inc.*
     2014 U.S. Dist. LEXIS 37880, 2014 WL 1155304 (E.D.N.Y. Mar. 21, 2014)....................... 18

*Bellows v. NCO Fin. Sys., Inc.*
     No. 3:07-cv-1413-W, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) ...................................... 18

*Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979)..................................... 15

*Capital One Telephone Consumer Prot. Act Litig.,* 12-cv-10064 (N.D. Ill. Judge Holderman).. 13

*CE Design Ltd.v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D. Ill. 2009)......................... 23

*Charron v. Pinnacle Grp. N.Y. LLC,* 269 F.R.D. 221 (S.D.N.Y. 2010) ................................... 9, 26

*Clark v. Ecolab, Inc.,* 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)........................................... 10

*Connor v. JPMorgan Chase Bank, N.A., No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015)* 16

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir.1995) ....................................... 20

*Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326 (1980)........................................................... 24

*Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2d Cir. 1992).................................... 11, 22

*Ferrington v. McAfee, Inc.,* 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ................................... 16

*Finch v. N.Y. State Office of Children & Family Servs.,* 252 F.R.D. 192 (S.D.N.Y. 2008)......... 26

*Forcellati v. Hyland's Inc.,* 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)................................... 16

*Fox v. Cheminova, Inc.,* 213 F.R.D. 113 (E.D.N.Y. 2003)........................................................... 21

*Freeland v. AT & T Corp.,* 238 F.R.D. 130 (S.D.N.Y. 2006) ....................................................... 21

*Gascho v. Global Fitness Holdings, LLC,* 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014)............ 25

*General Telephone Co. of Sw. v. Falcon,* 457 U.S. 147 (1982) .................................................. 23

*Grant v Capital Mgt. Servs.s, L.P.,* 2014 WL 888665 (S.D. Cal. Mar. 5, 2014)................ 9, 18, 26

*Green v. Service Master,* 2009 WL 1810769 (N.D. Ill. June 22, 2009) ...................................... 15

*Hageman v. AT&T Mobility LLC, et al.,* Case 1:13-cv-00050-DLC-RWA (D. MT.)................... 13

*Hawk Valley, Inc. v. Taylor,* 301 F.R.D. 169 (E.D. Pa. 2014)...................................................... 21

*In re Allstate Ins. Co.,* 400 F.3d 505 (7th Cir. 2005)................................................................... 24

*In re Enhanced Recovery Co.,* 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) ..................... 17

*In re Flonase Antitrust Litig.,* 291 F.R.D. 93 (E.D. Pa. 2013)..................................................... 25

*In re Ins. Brokerage Antitrust Litig.,* 297 F.R.D. 136 (D.N.J. 2013)........................................... 25

*In re Mut. Funds Inv. Litig.,* 2011 WL 1102999 (D. Md. Mar. 23, 2011)..................................... 26

*In re NASDAQ Mkt. Makers Antitrust Litig.,* 1997 WL 805062 (S.D.N.Y. Dec. 31, 1997)......... 11

*In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132 (2d Cir. 1998) ........................................... 10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200 (S.D.N.Y. 1995)............. 19, 21, 22

*In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................... 13

*Jackson v. Bloomberg, L.P.,* 298 F.R.D. 152 (S.D.N.Y. 2014) ................................................... 21

*Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92 (N.D. Ill. 2013)........................................... 22

*Johansen v. Vivant, Inc.*
     2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012)...................... 18

*King v. Time Warner Cable*, 113 F. Supp. 3d 718 (S.D.N.Y. 2015) .............................................. 18

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) .................................. 23

*Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409 (E.D.N.Y. 2013).............. 17

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014)................................................... 23

*M. Berenson Co. v. Faneuil Hall Market Place, Inc.*, 671 F. Supp. 819 (D. Mass 1987)........... 12

*Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)........................... 26

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................... 19

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 10, 2009).............................. 26

*Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131 (3d Cir. 2011).............................................. 26

*Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................. 26

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 25

*Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596 (N.D. Ohio Mar. 18, 2016)  18

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ................................ 17

*Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312 (N.D. Ill. 2008)........ 15

*Saragusa v. Countrywide*, 2016 U.S. Dist. LEXIS 34544 (E.D. La. Mar. 17, 2016)................... 18

*See In re Baldwin-United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1984) .............................................. 11

*Steinfeld v. Discover Fin. Servs.* 12-cv-01118 (N.D. Cal.) ......................................................... 17

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993)................................... 11, 22

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo. 2011) .......................... 14

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D. Ill. 2011) ............. 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, (2d Cir. 2005) ...................................... 10

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .................................................................. 11

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ................................... 15

*West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971) ............................................ 15

*Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287 (N.D. Ill. 2014) ................................ 24

## Statutes

47 U.S.C. § 227(b)(1)(A)(3) ............................................................................................................ 6

## Other Authorities

Fed. R. Civ. P. 23(a) .................................................................................................................. 9, 23

Fed. R. Civ. P. 23(a)(2)................................................................................................................... 24

Fed. R. Civ. P. 23(b)(3).............................................................................................................. 9, 26

Fed. R. Civ. P. 23(e) ...................................................................................................................... 14

Herbert B, Newberg & Alba Conte, Newberg on Class Actions ("Newberg") (4th ed. 2002) ... 14,
    16

The Plaintiffs, Cindy Vazquez ("Vazquez"), Debbie Bennett and Phillip Bennett (collectively, the "Bennetts"), Diana Austin ("Austin" and the "Injunction Class Plaintiff"), and Cherie Laursen ("Laursen"), (hereinafter collectively referred to as "Class Plaintiffs"), respectfully submit this memorandum in support of the Class Plaintiffs' unopposed motion to preliminarily approve their *Class Action Settlement Agreement and Release* (the "Settlement Agreement"),[1] attached as <u>Exhibit A</u> to this memorandum.   Defendant Convergent Outsourcing, Inc. ("Convergent" and, collectively with Class Plaintiffs, the "Parties") does not oppose the relief sought herein.

After years of litigation and following mediation, the Parties resolved this matter on a class wide basis. The Rule 23(b)(3) damage Class is estimated to include approximately 503,644 unique cellular telephone numbers and is limited to persons called by Convergent on a cellular telephone who (a) had been reported to Convergent as a wrong number; (b) previously requested Convergent not to call such telephone number; (c) called after providing to Convergent notice of bankruptcy; (d) called after entry by Convergent of an internal attorney handling code or (e) had been called on a cell number obtained via third party skip tracing, on or after October 26, 2008. This class will receive a prorata share of $5,500,000 as discussed further below.

In response to Convergent's contention that it had consent to call the cellular telephones and that such consent is an individual issue that precludes class certification, the parties have agreed to settle the Rule 23(b)(2) injunction Class.  Those class members retain their right to sue Convergent, but in exchange for giving up their right to bring a putative class action against Convergent for purported violations of the TCPA, Convergent agrees to an injunction requiring it not move to dismiss any TCPA claim for failing to plead an ATDS was used and that in any

---

[1] Capitalized terms have the same meaning as defined in the Settlement Agreement.

answer to a lawsuit, it will admit that it used an ATDS.  Considering the ATDS issue is usually the major factual dispute in any individual TCPA lawsuit, the fact that a plaintiff often needs an expert to opine on whether the calling system is an ATDS and the fact that the TCPA is not fee shifting,  underscores the real value to the Rule 23(b)(2) injunction Class.

The Parties respectfully request that the Court preliminarily approve the terms of the Settlement Agreement; conditionally certify two classes for purposes of settlement (the "Rule 23(b)(3) Class" and the "Rule 23(b)(2) Class"); appoint Class Plaintiffs as Settlement Class Representatives; appoint the law firms Keogh Law, Ltd., Lemberg Law, LLC, Hyde & Swigart, and Lyngklip & Associates Consumer Law Group, PLC as settlement Class Counsel; approve the form, content and method of delivering notice to the Rule 23(b)(3) Class as set out in the Settlement Agreement; and schedule a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement.  A proposed order in the form approved by the Parties is included as Exhibit 4 to the Settlement Agreement and is submitted herewith for the Court's consideration.

## INTRODUCTION

Between October 26, 2012, and June 13, 2013, Class Plaintiffs initiated separate putative class actions alleging that Convergent violated the Telephone Consumer Protection Act (the "TCPA") by using an automatic telephone dialing system and/or an artificial or prerecorded voice to call cell phones without prior express consent. *Settlement Agreement*, §§ 1.2-1.5.  On November 5, 2013, the Judicial Panel on Multidistrict Litigation consolidated the actions as the MDL Action.  *Id*. at § 1.6.  In the MDL Action, the Class Plaintiffs filed a Consolidated Amended Complaint on March 31, 2014 that alleges that Convergent violated the TCPA by using an automatic telephone dialing system and/or an artificial or prerecorded voice to call cell

phones without the prior express consent of Class Plaintiffs or the putative class members.  *Id*. at § 1.7.  Plaintiffs claim those calls violated 47 U.S.C. § 227(b)(1)(A)(iii) and that Convergent is liable for statutory damages of at least $500 for each call made in violation of the TCPA.[2] Convergent denies all material allegations of the Complaints filed by the Class Plaintiffs in their respective individual actions and the Class Action Plaintiffs' Consolidated Amended Complaint filed in the MDL Action.  *Id*. at §§  1.8 16.2-16.3.  Among its defenses, Convergent disputes that it used an automated dialer or prerecorded voice message to contact the Class Plaintiffs or putative class members without their prior express consent, disputes that it violated the TCPA, and disputes that Class Plaintiffs and putative class members are entitled to any relief from Convergent.  *Id*.

The Parties have vigorously litigated the case over the past three-plus years and thoroughly investigated the facts of this case.  The parties engaged in contested motion practice relating to discovery, Convergent produced documents requested by Class Counsel (defined below), produced numerous deponents under Rule 30(b)(6) of the Federal Rules of Civil Procedure to testify to topics relevant to the litigation during this process, and responded to discovery regarding same including producing call data for Class Plaintiffs' expert to analyze. *Id*. at § 1.10  The Parties participated in private mediation before Lester J. Levy, Esq. ("Mediator Levy") of Judicial Arbitration and Mediation Services, Inc. ("JAMS").  *Id*.  The Parties submitted detailed mediation submissions to Mediator Levy setting forth their respective views as to the strengths of the case, and participated in numerous telephone calls with the mediator prior to the October 29, 2015 mediation.  *Id*.  The Parties engaged in follow-up meetings and negotiations, to reach a resolution in principle on November 30, 2015.  *Id*.  Subsequent arm's-

---

[2] Class Plaintiffs also sought (1) injunctive relief; and (2) an award of attorney's fees and costs.

length negotiations have produced an agreement on the specific terms set forth in the Settlement Agreement.[3] *Id.*

The Parties now present those terms for the Court's preliminary approval.  The Parties ask that the Court enter the Preliminary Approval Order attached as <u>Exhibit 4</u> to the Settlement Agreement to (A) conditionally certify the Rule 23(b)(3) Class and the Rule 23(b)(2) Class for settlement purposes only and appoint Class Counsel for the Class; (B) preliminarily approve this Settlement Agreement and the Settlement reflected herein as fair, adequate and reasonable to the Rule 23(b)(3) Class and Rule 23(b)(2) Class, and within the reasonable range of possible final approval; (C) approve the form of Class Notice and find that the notice program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Rule 23(b)(3) Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (D) direct that notice be provided to the Rule 23(b)(3) Class, in accordance with this Settlement Agreement, within forty-five (45) days following entry of the Preliminary Approval Order (the "Notice Deadline"); (E) establish a procedure for any class members to object to the Settlement Agreement or exclude themselves from either class; (F) set a deadline sixty (60) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself or seek to intervene (the "Opt-Out and Objection Deadline"); (G) approve the Claim Form (<u>Exhibit 1</u> to the Settlement Agreement) and the claims process described herein for the Rule 23(b)(3) Class; (H) set the Claim Period for the submission

---

[3] The executed Settlement Agreement is attached hereto as <u>Exhibit A</u>.   Appended to the Settlement Agreement and incorporated therein are the following exhibits:

    <u>Exhibit 1</u> – the "Claim Form"
    <u>Exhibit 2</u> – the "Final Approval Order and Judgment"
    <u>Exhibit 3</u> – the "Mail Notice"
    <u>Exhibit 4</u> – the "Preliminary Approval Order"
    <u>Exhibit 5</u> – the "Website Notice."

of Claims to end sixty (60) days after the Notice Deadline; (I) pending determination of whether the Settlement Agreement should be finally approved, bar and enjoin all persons in the Rule 23(b)(3) Class, directly, on a representative basis or in any other capacity, from commencing or prosecuting against any of the Released Parties any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims unless they timely opt-out; (J) pending final determination of whether the Settlement Agreement should be approved, stay all proceedings except those related to effectuating the Settlement Agreement; and (K) schedule a hearing to consider Final Approval of the Settlement Agreement, which shall be scheduled no earlier than sixty (60) days after the Opt-Out and Objection Deadline.

The Settlement Agreement was arrived at through arm's-length negotiations by experienced counsel and after extensive discovery. The Settlement Class exceeds the certification requirements of Fed. R. Civ. P. 23(a), (b)(3) and (b)(2), and the Settlement Class is more than adequately represented by Class Counsel. Moreover, the Settlement Agreement provides for outstanding relief for these disputed claims under the TCPA and warrants preliminary approval and notice to the Settlement Class Members.

## **TERMS OF THE SETTLEMENT**

1. Class Definition

The Rule 23(b)(3) Class is defined to include:

All persons called by Convergent on a cellular telephone who (a) had been reported to Convergent as a wrong number; (b) previously requested Convergent not to call such telephone number; (c) called after providing to Convergent notice of bankruptcy; (d) called after entry by Convergent of an internal attorney handling code or (e) had been called on a cell number obtained via third party skip tracing, on or after October 26, 2008 through and including the date of entry of the Preliminary Approval Order.

*See Settlement Agreement*, § 2.32. Excluded from the Rule 23(b)(3) Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family, and all persons who are validly excluded from the Rule 23(b)(3) Class. The parties estimate that there are approximately 503,644 unique cellular telephone numbers in this Rule 23(b)(3) Class. *Id.*

The Rule 23(b)(2) Class is defined to include:

All persons who were called by Convergent on a cellular telephone, on or after October 26, 2008 through and including the date of entry of the Preliminary Approval Order.

Excluded from the Rule 23(b)(2) Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family, and all persons who are properly opted out or excluded from either the Rule 23(b)(2) Class or the Rule 23(b)(3) Class. *Id*. at § 2.34.

2. Settlement Benefits to Settlement Class Members

First, under the terms of the Settlement Agreement, each Rule 23(b)(3) Class Member can claim a share of a $5,500,000.00, non-reversionary, Settlement Fund. *See Settlement Agreement*, §§ 9.1 and 12.1-12.3. Rule 23(b)(3) Class Members who timely submit a claim form will receive a pro-rata distribution of the Settlement Fund, after Attorney's Fees and Costs, any Incentive Award to Named Plaintiffs, and any Settlement Costs are deducted from the Settlement Fund and the Settlement Administrator reviews all Claim Forms to determine a final number of claimants. *Id*. Rule 23(b)(3) Class Members will have one-hundred twenty (120) days to cash their checks. *Id.*

If money remains in the Settlement Fund after one-hundred twenty (120) days, the Claims Administrator will make a Second Distribution to each Rule 23(b)(3) Class Member who cashed his or her initial Settlement Award check, if such money is sufficient to pay at least ten dollars ($10.00) to each such Rule 23(b)(3) Class Member. Money in the Settlement Fund that

has not been distributed pursuant to the Second Distribution, including money not distributed because there is not enough money in the Settlement Fund to justify a Second Distribution (the "Remaining Funds"), shall be paid as *cy pres* to a recipient agreed to by the Parties and approved by the Court. *Settlement Agreement*, §§ 12.2-12.3.  Plaintiff will suggest that *cy pres*, if any, be directed to the National Consumer Law Center earmarked to work with the Federal Communication Commission to maintain the protections of the TCPA.  Defendant proposes the National Adult Protective Services Association wherein the association may assist elderly adults protect themselves against identity theft or fraud.  The settlement website will advise the class members of these choices and the parties will submit supplemental briefing when, if ever, there is a need to direct *cy pres* in this case.

Second, under the terms of the Settlement Agreement, each Rule 23(b)(2) Class Member retains his or her right to sue Convergent individually under the TCPA (right to bring a putative class action is waived).  In exchange Convergent agrees not move to dismiss any TCPA claim for failing to plead an ATDS was used, and to admit in any answer to a TCPA claim that it used an ATDS.  *Settlement Agreement*, §§ 5.3, 9.2.

   3.  <u>Claim Form</u>

To receive any settlement benefits, Rule 23(b)(3) Class Members will be required to submit a short Claim Form. *Settlement Agreement*, § 10.2.  A Claim Form will be included with the Notice or can be found and filed on-line at a dedicated website. *Settlement Agreement*, § 10.2(A)-(B).  The Claims Administrator will also establish and maintain an 800 number that will answer questions concerning this Agreement and allow class members to request a written claim form or use their Claim ID to make a claim via telephone. *Settlement Agreement*, § 10.2(C).

   4.  <u>Settlement Class Representatives and Attorneys' Fees and Incentive Awards</u>

Class Counsel will move the Court for an award of attorneys' fees and expenses paid from the Settlement Fund. The amount of attorneys' fees and costs approved by the Court shall be paid from the Settlement Fund, and from no other source. Court approval of attorneys' fees and costs, or their amount, is not a condition of Settlement.

Class Representatives will also ask the Court to award them incentive payments (in addition to any *pro rata* distribution they may receive) for the time and effort they have personally invested in this Action. Any incentive payment shall come from the Settlement Fund and from no other source. The Settlement is not dependent upon the Court approving amounts sought by Class Plaintiffs. Both the summary notice mailed to the class members and the long form notice on the Settlement Website shall advise the class of the amounts being sought.

5. <u>Releases</u>

In exchange for the benefits of the Settlement, Class Plaintiffs have agreed to dismiss this litigation with prejudice as to themselves and all Rule 23(b)(3) Class Members, Rule 23(b)(2) Class Members, and the Injunction Class Plaintiff. *Settlement Agreement*, §§ 16.1, 17.2. Class Plaintiffs and all members of the Rule 23(b)(3) Class who do not timely opt out will release Convergent from all claims regarding the use of automated dialing systems and/or prerecorded voice messages as well as all claims that were or could have been asserted by Plaintiff in this litigation. *Id.*

Diana Austin, the Injunction Class Plaintiff, and the Rule 23(b)(2) Class Members, have agreed to release any right to file, prosecute or participate in a putative or certified class action lawsuit against Convergent, in exchange for an injunction requiring Convergent's not move to dismiss any TCPA claim for failing to plead an ATDS was used, and to admit that it used an ATDS in any answer to a lawsuit. *Settlement Agreement*, § 17.5.

6. <u>Notice</u>

Written notice of the proposed settlement will be provided to the Rule 23(b)(3) Class via mail by the Notice Deadline, i.e. forty-five (45) days following the Court's entry of the Preliminary Approval Order. *Settlement Agreement*, §§ 10.2(A), 11.  The Claims Administrator will also establish and maintain the Settlement Website dedicated to the Settlement, on which will be posted the Website Notice, Claim Form, a copy of this Agreement, the Preliminary Approval Order, the operative Complaint, and any other materials the Parties agree to include. *Settlement Agreement*, §10.2(B).  The Claims Administrator will also establish and maintain an 800 number that will answer questions concerning this Agreement and allow class members to request a written claim form or use their Claim ID to make a claim via telephone. *Settlement Agreement*, §10.2(C).

Notice of to the Rule 23(b)(2) Injunction Class need not be provided to the Injunction Class Members. *See Rule 23(b)*; *See Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 228 (S.D.N.Y. 2010) (" 'A Rule 23(b)(2) class . . . does not require notice to allow class members to opt out." (quoting *Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008)); *see, e.g.*, *Grant v Capital Mgt. Servs., LP*, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014), at *2, *8-9 (finally approving class settlement under TCPA providing only injunctive relief and no notice to the class).   In addition, the Rule 23(b)(2) Injunction Class would consist of everyone not in the Rule 23(b)(3) Damage class, which would equal millions of persons.  The entire settlement fund in this case would not cover the cost to provide notice to those persons and as such notice would be impracticable.

7. <u>Opt-Out Rights</u>

Members of the Rule 23(b)(3) Class can opt out of the class by sending a written request to the Claims Administrator at the address designated in the Class Notice no later than the Opt-Out and Objection Deadline. *Settlement Agreement*, § 13.1.  Exclusion requests must: (i) be signed by the person in the Rule 23b(3) Class who is requesting exclusion; (ii) include the full name and address of the person in the Rule 23b(3) Class requesting exclusion; and (iii) include the following statement: "I/we request to be excluded from the settlement in the Convergent TCPA action." *Settlement Agreement*, § 13.1.

8. <u>Proposed Deadlines</u>

The following table sets forth the important deadlines proposed in the Settlement Agreement:

| **EVENT** | **SCHEDULED DATE** |
|---|---|
| CAFA notice due | Within 10 days of entry of Preliminary Approval motion |
| Notice Deadline | 45 days after entry of Preliminary Approval Order |
| Last day for Class Members to opt out of or object to Settlement | 60 days after Notice Deadline |
| Last day to submit a Valid Claim Form (the "Claim Period") | 60 days after Notice Deadline |
| Parties request Final Approval | Within 60 days after end of Claim Period |

The Settlement Agreement represents the Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of the Settlement Class Members. Accordingly, the Settlement Agreement meets the threshold requirements for preliminary approval and the Settlement Class should be preliminary certified.

## POINT I

## THE SETTLEMENT AGREEMENTSHOULD BE PRELIMINARILY APPROVED

### I.   STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted).   Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e).  Rule 23(e) also requires judicial approval of any settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e).  Preliminary approval, which is what Class Plaintiffs seek here, is the first step in the settlement process. It requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Herbert B, Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11.25 (4th ed. 2002)).[4]  It allows notice to issue to the class and for class members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. *Clark*, 2009 WL 6615729, at *3.

Authorization to disseminate notice reflects recognition by the Court that the settlement is in the range of possible approval.  The ultimate Rule 23(e) determination is reserved pending the completion of the notice and initial opt-out process, so the Court can consider input from the class members who will be bound by the final approval order. *See In re Baldwin-United Corp.*,

---

[4] Copies of all unreported decisions are appended hereto as <u>Exhibit ____</u>.

105 F.R.D. 475, 485 (S.D.N.Y. 1984) (authorizing provisional class certification and notice "without prejudice to the findings the Court will make after conducting the fairness hearing, at which time all objections or arguments in opposition to the proposed settlements will be heard and considered and proponents must discharge their burden to prove that the proposed settlement agreements are fair and reasonable"); *see also In re NASDAQ Mkt. Makers Antitrust Litig.*, 1997 WL 805062, *8 (S.D.N.Y. Dec. 31, 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted.").

Whether the settlement falls within the range of possible approval under Rule 23 turns on whether there is a conceivable basis for presuming that the more rigorous standard applied for final approval will be satisfied. The standard for final approval of a settlement consists of showing that the settlement is "fair, reasonable and adequate," *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), considering "the complexity of the litigation, comparison of the proposed settlement with the likely result of litigation, experience of class counsel, scope of discovery preceding settlement, and the ability of the defendant to satisfy a greater judgment." *In re: Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992). In the absence of fraud, collusion or the like, the Court should not substitute its own judgment for that of counsel. *Weinberger*, 698 F.2d at 73; *see also Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("[A]bsent evidence of fraud or overreaching [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel . . . ."); *M. Berenson Co. v. Faneuil Hall Market Place, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987) ("Where, as here, a proposed settlement has been reached after meaningful discovery, after arm's

length negotiation, conducted by capable counsel, it is presumptively fair."). Here, the test is whether the settlement is sufficiently fair such as to notify the Class and provide its members an opportunity to be heard.

II.     **THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE, WITHIN THE RANGE OF REAONSABLENESS, AND THUS WARRANT PRELIMINARY APPROVAL**

   A.   **The Settlement is Presumed Fair Following Arm's-Length Negotiations Overseen by an Experienced Mediator**

Settlements negotiated at arm's-length by experienced class counsel are presumed to warrant preliminary approval. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005). As one distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> * * *
>
> The initial presumption of fairness of a class settlement may be established by showing that:
>
> (i) the settlement has been arrived at by arm's-length bargaining;
>
> (ii) sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and]
>
> (iii) the proponents of the settlement are counsel experienced in similar litigation.

Newberg, § 11:41, 92-93 (4th ed. 2002).

Here, all three prerequisites to the presumption of preliminary fairness are satisfied. First, the terms of the Settlement were reached only through arm's-length negotiations, overseen by Mediator Levy of JAMS over the course of several months. The Parties submitted detailed mediation submissions to Mediator Levy and participated in numerous telephone calls prior to the October 29, 2015 mediation. The Parties did not come to an agreement on that date. Instead,

the Parties continued to negotiate, finally coming to a resolution in principle on November 30, 2015.  The discussions were extensive and adversarial. (See *Exhibit B: Declaration of Keith J. Keogh* ¶ 35, *Exhibit C: Declaration of Sergei Lemberg*, ¶ 11, *Exhibit D: Declaration of David McGlonthlin* ¶ 4, *Exhibit E: Declaration of Ian Lyngklip* ¶¶ 5-6).

Second, the Settlement was reached after extensive discovery investigation of the facts supporting the Class Plaintiffs' allegations, Convergent's defenses and the requirements of Rule 23. (*Declaration of Keogh* ¶ 39, *Declaration of Lemberg* ¶11).  As this Court is well aware, the Parties engaged in contested motion practice relating to discovery, Convergent produced documents requested by Class Counsel, produced numerous deponents under Rule 30(b)(6) of the Federal Rules of Civil Procedure to testify on topics relevant to the litigation during this process, and responded to discovery regarding same.  Given the procedural status of the Action and the time invested in its prosecution and defense, the Parties have a solid grasp of the respective strengths and weaknesses of their positions.

Third, the proponents of the Settlement are highly experienced in class action litigation, especially class litigation under the TCPA. . (*Declaration of Keogh* ¶¶ 5-12, *Declaration of Lemberg* ¶¶ 5-7, *Declaration of McGlothlin* ¶ 14, *Declaration of Lyngklip* ¶ 28).  In fact, Mr. Keogh was class counsel in the two largest TCPA settlements in the country to date.  *See Hageman v. AT&T Mobility LLC*, Case 1:13-cv-00050-DLC-RWA (D. Mont.) (Co-Lead) (Final Approval Granted February 11, 2015 providing for a $45 million settlement for a class of 16,000 persons) and *Capital One Telephone Consumer Protection Act Litigation*, et al., 12-cv-10064 (N.D. Ill. Judge Holderman) (Liaison Counsel and additional Class Counsel) (Final Approval Granted February 12, 2015 for a $75 million settlement).

The opinion of experienced counsel supporting the settlement, as here, is entitled to considerable weight. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's length negotiation conducted by experienced, capable counsel.").

**B.   The Settlement Agreement Is a Preferable Alternative to the Risks Through Continued Litigation**

In agreeing to a Settlement Fund of $5,500,000.00 and the injunction benefit to that class, Class Plaintiffs and their counsel have considered the risks inherent to litigation and the various defenses available to Convergent.   The reality that Class Plaintiffs and the Settlement Class Members could end up recovering nothing or only a fraction of the settlement benefits if the Court did not certify a class or if Class Plaintiffs failed to prevail at trial was significant enough to convince Class Plaintiffs and Class Counsel that the benefits of the settlement reached with Convergent outweigh the gamble of continued litigation.

In addition, Convergent's ability to pay any larger settlement let alone a verdict was in serious doubt.   Convergent did not have sufficient funds to pay this settlement, but was able to agree to it through certain raised funding from third party investors.   Further, the insurance companies refused to contribute to the settlement so that there was real risk of the class receiving much less even if Class Plaintiffs obtained a judgment.

Class Plaintiffs and their counsel knew that going forward there was a significant risk that the Court would decline to certify this case as a class action.   A central issue in this case is whether Convergent possessed the prior express consent of class members it called using an automated telephone dialing system.   Courts have offered differing opinions in other cases under the TCPA regarding whether questions of consent require an individualized inquiry and thus denied class certification, though the majority appear to deny class certification on the consent

issue. *Compare, e.g.*, *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number" (internal citations omitted)), *with Green v. Service Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification." (internal citations omitted)), *and and Agne v. Papa John's Intern.*, *Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

While Class Plaintiffs and their counsel believe the facts of this case make class certification appropriate, they are also aware that Convergent was prepared to argue that class certification was inappropriate and vigorously defend this action in this Court or on appeal.  As in any case, there is a substantial risk of losing at trial.  And, even if Class Plaintiffs did prevail, any recovery could be delayed for years by an appeal or series of appeals.  *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). In contrast, the Settlement Agreement provides substantial relief to Rule 23(b)(3) Class Members without further delay.

16

## C. **The Settlement Agreement Provides a Substantial Benefit to Settlement Class Members and Falls Within a Range of Possible Approval**

The Settlement Agreement requires Convergent to pay $5,500,000.00 into the Settlement Fund, out of which all eligible Rule 23(b)(3) Class Members may receive a *pro rata* share of cash payments.  The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to claiming Rule 23(b)(3) Class members or *cy pres*—no amount of the Settlement Fund will return to Convergent.  Assuming Attorneys' Fees of one third, and Settlement Costs total of roughly $300,000, Rule 23(b)(3) Class Members, of which there are an estimated 503,644 (*see Settlement Agreement*, § 2.32), would share approximately $3,385,000.

Assuming a 5% response-rate,[5] Class Counsel anticipates that each Rule 23(b)(3) Class Member will receive approximately $135 each from the Settlement Fund ($3,666,666.67 divided by 25,182 claiming Rule 23(b)(3) Class Members).  This number is well and comfortably within the range of settlements deemed fair and reasonable by many Courts in TCPA class actions.  The settlement here is more than reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable and adequate.  Indeed, courts have found similar TCPA class action settlements to meet the standards for preliminary approval and, as well as final approval.  *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015)[6] (entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Holderman J.) (February 12, 2015 granting final approval were each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29,

---

[5] "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014); *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) (same).

[6] *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS, Final Judgment and Order of Dismissal, Dkt No. 160 (S.D. Cal. Feb. 5, 2015)

2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); S*teinfeld v. Discover Fin. Sers*. 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant); *In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive relief for class) and ECF No. 124 (settlement granted final approval).[7]

The Settlement is also reasonable and provides outstanding relief to the Rule 23(b)(2) Class.  Under the Settlement Agreement, Rule 23(b)(2) Class Members retain the right to sue Convergent under the TCPA, and Convergent agrees to admit its use of an ATDS in any such lawsuit.  In exchange, Rule 23(b)(2) Class Members waive the right to bring a subsequent TCPA class action.  As noted above, the ATDS issue is usually the major factual dispute in any individual TCPA lawsuit, the fact that a plaintiff often needs an expert to opine on whether the calling system is an ATDS and the fact that the TCPA is not fee shifting, underscores the real value to the Rule 23(b)(2) Class.

Thus, any Rule 23(b)(2) Class Member who wishes to pursue his or her rights under the TCPA will be able to do so and with less resistance and less expense.  Indeed, a prima facie TCPA claim consists of (1) receiving a call on a cell phone, (2) from an ATDS. *See* 47 U.S.C. § 227(b)(1)(A); *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013) ("Thus, to prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the defendant called his or her cell phone, and (2) the defendant did so using an ATDS . . . ."); *see also King v. Time Warner Cable*, 113 F. Supp. 3d

---

[7] *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) ($9,750,000 to cover claims of over 1,400,000 class members); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving settlement of $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012); *Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, *see* DE 109 at 10, 116 at 6, and 137).

718, 726 (S.D.N.Y. 2015).  In light of the Settlement Agreement, a Rule 23(b)(2) Class Member need only prove that he or she received a call from Convergent after October 26, 2008 to make out a prima facie case.  This benefit to the Rule 23(b)(2) is significant and meaningful.  *See Saragusa v. Countrywide*, 2016 U.S. Dist. LEXIS 34544, *11 (E.D. La. Mar. 17, 2016) (Dismissing pro se complaint because "Saragusa has not sufficiently alleged the other elements of a TCPA claim. In conclusory fashion, Saragusa alleges that Bank of America used an "automatic telephone dialing system" or an "artificial or prerecorded voice" to make the calls. First, mere recitation of the elements of a cause of action is insufficient to plausibly state a claim for relief.");  *Johansen v. Vivant, Inc.*, 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012) (dismissing complaint when plaintiff failed to enhance the complaint with anything more than the language already available in the statute.); *Baranski v. NCO Fin. Sys., Inc.*, 2014 U.S. Dist. LEXIS 37880, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014)(holding against a debt collector similar to Convergent that "Plaintiffs must do more than simply parrot the statutory language"  defining ATDS and noting that the "vast majority of courts to have considered the issue have found that "a bare allegation that defendants used an ATDS is not enough"); *Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, *10-11 (N.D. Ohio Mar. 18, 2016) (Dismissing case for failure to plead ATDS even after two years of discovery).

Courts have approved class settlement of TCPA claims under Rule 23(b)(2).  *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 88865, at *4, *9 (S.D. Cal. Mar. 5, 2014) (finally approving TCPA class settlement under Rule 23(b)(2)); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-1413-W, 2008 WL 4155361, at *7 (S.D. Cal. Sept. 5, 2008) (Report and

Recommendation by Special Master to preliminarily approve class settlement), *accepted*, No. 3:07-cv-1413-W, at Doc. No. 24 (S.D. Cal. Sept. 9, 2008).

Because the Settlement Agreement was negotiated at arm's-length by experienced counsel after extensive discovery, and because the Settlement is reasonable and easily falls within the range of possible approval, this Court should grant preliminary approval of the Settlement Agreement.

**POINT II**

**THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED**

**I.      LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS ACTION FOR SETTLMENT PURPOSES**

To approve a class action settlement, the Court must find that the Settlement Class is appropriately certified pursuant to Fed. R. Civ. P. 23. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). In the context of a settlement class, certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 659 (S.D.N.Y. 2015) ("Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995))).

20

For settlement purposes only, the Parties respectfully request that the Court provisionally certify the Rule 23(b)(3) Class and Rule 23(b)(2) Class defined (respectively) as:

> All persons called by Convergent on a cellular telephone who (a) had been reported to Convergent as a wrong number; (b) previously requested Convergent not to call such telephone number; (c) called after providing to Convergent notice of bankruptcy; (d) called after entry by Convergent of an internal attorney handling code or (e) had been called on a cell number obtained via third party skip tracing, on or after October 26, 2008 through and including the date of entry of the Preliminary Approval Order;

> and,

> All persons who were called by Convergent on a cellular telephone, on or after October 26, 2008 through and including the date of entry of the Preliminary Approval Order.

*See Settlement Agreement*, §§ 2.32 & 2.34. As detailed below, the Rule 23(b)(3) Class and Rule 23(b)(2) Class satisfy the Fed. R. Civ. P. 23 requirements.

### A.  Fed. R. Civ. P. 23(a) Requirements

#### i.    Numerosity is Satisfied

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) (finding numerosity requirement met if a class consists of at least 40 members). The Parties estimate that there were approximately 503,644 unique cellular telephone numbers called within the Class Period whose owner (a) had been reported to Convergent as a wrong number; (b) previously requested Convergent not to call such telephone number; (c) called after providing to Convergent notice of bankruptcy; (d) called after entry by Convergent of an internal attorney handling code, or (e) had been called on a cell number obtained via third party skip tracing.  Thus the Parties approximate 503,644 individuals in the Rule 23(b)(3) Class.  Meanwhile, the Rule 23(b)(2) Class encompasses all persons called

by Convergent over a more-than seven year period and in all likelihood numbers in the millions. Numerosity is satisfied.

ii.     Commonality is Satisfied

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2). "[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'" *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 126 (E.D.N.Y. 2003) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam)).   "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).  Class certification is appropriate where the "classwide proceeding [will] generate common answers apt to drive resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.

Here, common issues of fact and law include: (1) whether Convergent used an automated telephone dialing system or prerecorded voices to call cellular phones, (2) whether Convergent obtained valid prior express consent, (3) whether Convergent knew or should have known that it called consumers without prior express consent if it did, in fact, call without prior express consent, and (4) whether a private right of action exists, jurisdiction is proper and statutory damages are available.  Because the answers to these questions can resolve the Settlement Class Members' claims, commonality is established. *See, e.g.*, *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014) (commonality satisfied by question of whether defendant exceeded the scope of its prior express consent under the TCPA); *Avio, Inc. v. Alfoccino, Inc.*, 2015 WL 8731983, at *7 (E.D. Mich. Dec. 14, 2015) (common questions include whether Defendants first obtained express invitation or permission, whether Defendants' acts were willful or knowing).

22

### iii.      Typicality is Satisfied

"Rule 23(a)(3) requires that the claims asserted by the plaintiffs be typical of those claims of each member of the class. . . . [C]laims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 207-08. "The typicality requirement of Rule 23(a)(3) is liberally construed; and 'typical' does not mean 'identical.'" *Id.* at 208 (quoting *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y. 1992)). "The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact." *Id.*

Class Plaintiffs' TCPA claims arises from the same conduct as the Rule 23(b)(3) Class and Rule 23(b)(2) Class.  Class Plaintiffs were called on their cellular telephones after October 26, 2008, with an artificial or prerecorded voice or an automatic telephone dialing system in connection.  Because Class Plaintiffs' claims arise from and challenges the same course of conduct, typicality is satisfied.  *See, e.g.*, *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (finding typicality established where defendant "used an automatic telephone dialing system to call Jamison and every other class members' cellular telephone while undertaking to collect debts on behalf of Honda in violation of the TCPA").

### iv.      Adequacy of Representation is Satisfied

"The "adequacy of representation" requirement of Rule 23(a)(4) is comprised of two factors: (1) the representative party's attorney must be qualified, experienced and generally able to conduct the litigation; and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the Class. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Trief*, 144 F.R.D. at 201.

23

With respect to the first component, Class Plaintiffs' counsel have extensive experience litigating consumer class actions, and have been appointed class counsel in numerous other cases including TCPA class actions. (*Declaration of Keogh* ¶¶ 5-12, *Declaration of Lemberg* ¶¶ 5-7, *Declaration of McGlothlin* ¶ 14, *Declaration of Lyngklip* ¶ 28).   Moreover, Class Plaintiffs' counsel have litigated this case for over three years, have taken extensive discovery and Mr. Keogh and Mr. Lemberg were previously appointed Interim Class Counsel.   Based on their experience and track record, Class Plaintiffs' counsel are clearly adequate to represent the Settlement Class.

With regard to the second component, Class Plaintiffs received the same allegedly unlawful calls as Rule 23(b)(3) Class Members and Rule 23(b)(2) Class Members.   They have been deposed by Convergent and have expressed their willingness to maintain this litigation as a class action throughout this litigation.   Meanwhile Class Plaintiffs have not agreed to waive the Rule 23(b)(2) Class Members' right to pursue claims individually.   Class Plaintiffs have no known interests that are antagonistic to or conflicting with persons in either Class.   Finally, the Settlement is not contingent upon any service award allowed by this Court.   Thus, the adequacy requirement is met.

**B.  Fed. R. Civ. P. 23(b)(3) Requirements**

In addition to satisfying Rule 23(a), a class must satisfy the requirements of Rule 23(b)(1), (2), or (3).  *Amchem*, 521 U.S. at 623.   Class certification pursuant to Rule 23(b)(3) requires the court to determine whether common questions of law or fact predominate, and whether a class action is "superior to other available methods for fair and efficient adjudication of the litigation."  Fed. R. Civ. P. 23(b)(3).

24

"Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd.v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014). Common issues predominate over the Rule 23(b)(3) Class because a common questions – particularly whether Convergent placed autodialed calls to consumers' telephone without their prior express consent – drives liability for each Class Member's claim.

The superiority element requires courts to "balance 'the advantages of a class action against those of alternative available methods of adjudication.'" *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 177 (S.D.N.Y. 2014) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114 (S.D.N.Y. 2013)). A class-wide settlement of this action is superior to other available methods for the fair and efficient adjudication of this controversy because it is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Rule 23(b)(3) Class Members to pursue their claims against Convergent on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). By utilizing the class action vehicle, relief may be provided to class members without the need for numerous separate trials on the same facts. Hence, a class action will achieve economies of time, effort and expense, as well as promote uniformity of decision as to persons similarly situated. Because this is a settlement class, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his

or her rights"). Certification for purposes of settlement is therefore appropriate.

**C.  Fed. R. Civ. P. 23(b)(2) Requirements**

Under Rule 23(b)(2), class-wide injunctive relief or declaratory relief is appropriate where the "party opposing the class has acted or refused to act on grounds that apply generally to the class." Rule 23(b)(2) classes are appropriate where damages are not sought or are "incidental." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014) (quoting *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005)). Here, certification of the Rule 23(b)(2) Class is proper because, like the Rule 23(b)(3) Class, Convergent use of automated telephone dialing systems when placing calls to Rule 23(b)(2) class members is generally applicable to those class members and their claims.

## POINT III

### THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE

In addition to preliminarily approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class Notice and notice plan. Pursuant to Rule 23(e), the Court is required to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Although the question of what constitutes reasonable notice is left to the discretion of the Court, Rule 23 provides that the best notice practicable "include[s] individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here, which includes direct individual notice via U.S. Mail, as well as internet/website notice and an 800 number. *See Settlement Agreement*, § 10.2.

First, the proposed Notice (Exhibit 3 to the Settlement Agreement) communicates the information required by Rule 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a

process that the Parties anticipate will provide individual notice by mail to the vast majority of Rule 23(b)(3) Class Members. *Settlement Agreement*, § 10.2(A). The Claims Administrator will send Mail Notice to those addresses. *Settlement Agreement*, § 10.2(A). Mailed notice is presumptively reasonable, and satisfies the requirements of due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (finding the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"). Moreover, numerous courts have approved mailing summary notice to class members. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *6-7, 29 (S.D. Ohio Apr. 4, 2014) (finally approving settlement with postcard notice sent to majority of class); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving settlement with postcard notice); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (finally approving settlement with postcard notice); *Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619, at *11 (S.D. Cal. Feb. 5, 2013) (preliminarily approving settlement with postcard-type notice); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *4 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (preliminarily approving settlement with postcard notice for non-current customers and bill stuffers for current customers); *In re Mut. Funds Inv. Litig.*, 2011 WL 1102999, at *1-2 (D. Md. Mar. 23, 2011) (finding postcard notices satisfy Rule 23); *Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360, 1375-77 (S.D. Fla. 2007) (finally approving settlement with postcard notice).

Additionally, the Claims Administrator will establish and maintain the Settlement Website dedicated to the Settlement, on which will be posted the longer Website Notice, Claim Form, a copy of the Settlement Agreement, the Preliminary Approval Order, the operative Complaint, and any other materials the Parties agree to include. *Settlement Agreement*, § 10.2(B),

Exhibit 5. Further still, the Claims Administrator will establish and maintain an 800 number that will answer questions concerning this Agreement and allow Rule 23(b)(3) Class Members to request a written claim form or use their Claim ID to make a claim via telephone. *Settlement Agreement*, § 10.2(C).

Notice to the Rule 23(b)(2) Class is not necessary nor provided for in the Settlement Agreement. *See Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 228 (S.D.N.Y. 2010) (" 'A Rule 23(b)(2) class . . . does not require notice to allow class members to opt out." (quoting *Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008)); *see, e.g.*, *Grant*, 2014 WL 888665, at *2, *8-9 (finally approving class settlement under TCPA providing only injunctive relief and no notice to the class). Here, Rule 23(b)(2) Class Members receive only declaratory relief and retain their right to sue Convergent under the TCPA under the Settlement Agreement. The Class waives only the procedural mechanism created by Rule 23 to bring a class action under the TCPA, retains the right to bring individual claims for TCPA violations and, when brought, Convergent will be bound by this Court's injunction to admit in any Answer that it used an ATDS or not move to dismiss for failure to plead ATDS. Accordingly, the lack of notice is fair and the Court should preliminarily approve certification of the Rule 23(b)(2) Class for settlement purposes.

## POINT IV

## THE COURT SHOULD APPOINT EPIQ SYSTEMS, INC. AS CLAIMS ADMINISTRATOR

Class Plaintiffs and Class Counsel have retained Epiq Systems, Inc. ("Epiq") to act as Claims Administrator. Epiq has experience administering settlements and providing services, including class member data management, establishment of toll free phone lines to handle class member inquiries, translation services for class notice, distribution of class notice via U.S. Postal

Service, website hosting and management, and preparation of reports to courts describing notice and claims administration activities.  As such, Epiq has the requisite experience to act as Claims Administrator in this case.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter their proposed Preliminary Approval Order:

1. Conditionally certifying the Rule 23(b)(3) Class and the Rule 23(b)(2) Class for settlement purposes only and appoint Class Counsel for the Classes;

2. Preliminarily approving this Agreement and the Settlement reflected herein as fair, adequate and reasonable to the Rule 23(b)(3) Class and Rule 23(b)(2) Class, and within the reasonable range of possible final approval;

3. Approving the form of Class Notice and find that the notice program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Rule 23(b)(3) Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23;

4. Directing that notice be provided to the Rule 23(b)(3) Class, in accordance with this Agreement, within forty-five (45) days following entry of the Preliminary Approval Order and that no notice is required for the Rule 23(b)(2) Class;

5. Establishing a procedure for any class members to object to the Settlement or exclude themselves from either class;

6. Setting a deadline sixty (60) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself or seek to intervene;

29

7.  Approving the Claim Form and the claims process described herein for the Rule 23(b)(3) Class;

8.  Setting the Claim Period for the submission of Claims to end sixty (60) days after the Notice Deadline;

9.  Approving and appointing Epiq Systems, Inc. as Claims Administrator;

10. Barring and enjoining all persons in the Rule 23(b)(3) Class from commencing or prosecuting against any of the Released Parties any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims unless they timely opt-out, pending determination of whether the Settlement should be finally approved;

11. Staying all proceedings except those related to effectuating the Settlement pending final determination of whether the Settlement should be approved; and

12. Scheduling a hearing to consider Final Approval of the Settlement, which shall be scheduled no earlier than sixty (60) days after the Opt-Out and Objection Deadline.

Dated: April 5, 2016                           Respectfully submitted,


*For the Class Plaintiffs*,


By:   /s/ Keith J. Keogh
        Keith Keogh, Esq.
        Timothy Sostrin, Esq.
        Michael Hilicki, Esq.
        Keogh Law, Ltd.
        55 W. Monroe St., Suite 3390
        Chicago, Illinois 60603

By:   /s/ Sergei Lemberg
        Sergei Lemberg, Esq.
        LEMBERG LAW LLC

43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

By:   /s/ Ian B. Lyngklip

Ian B. Lyngklip, Esq.
Lyngklip & Associates Consumer Law Center, PLC
24500 Northwestern Highway, Suite 206
Southfield, MI 48075

/s/ David James McGlothlin

David James McGlothlin, Esq.
Hyde & Swigart
2633 E. Indian School Rd., Ste. 460
Phoenix, AZ 85016

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2016, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable accept electronic filing as indicated on the Notice of Electronic Filing.  A Chambers Copy of this filing will also be sent by email and regular U.S. Mail to Judge Thompson's law clerk.  Parties may access this document through the court's CM/ECF System.

/s/ Keith J. Keogh
Keith Keogh, Esq.
Timothy Sostrin, Esq.
Michael Hilicki, Esq.
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603

*For Class Plaintiffs*